BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
FRANK R. PAPAGNI, Jr., OSB #762788
Assistant United States Attorney
frank.papagni@usdoj.gov
405 E. 8th Avenue, Suite 2400
Eugene, OR 97401
Telephone: (541) 465-6771
Facsimile: (541) 465-6917
Attorneys for United States of America

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **6:17-CR-00274-MC** |
| **v.** | **UNITED STATES'** |
| **RONALD WAYNE THRASHER,** | **TRIAL  MEMORANDUM** |
| **Defendant.** | **Sentencing Date:  May 3, 2017** |

The United States of America, by Billy J. Williams, United States Attorney for the

District of Oregon, and Frank R. Papagni, Jr., Assistant United States Attorney, respectfully

submits the following trial brief.

### Trial Date and Estimated Length

An estimated two-day trial is to begin on September 27, 2017.  The government

anticipates approximately 10 witnesses will testify in its case-in-chief and offering less than 50

exhibits.  Stipulations (*e.g.*, chain of custody, laboratory analysis, etc.) should reduce the number

of witnesses.

Four members of the Central Oregon Drug Enforcement (CODE) team (Bigelow, Vander Kamp, Spano and Wall) may testify about the search and seizures from the Defendant's residence and bedroom. Two witnesses will testify about Defendant's possession of stolen pistol and ammunition (*i.e.,* owner (Nelson), and owner of the residence who rented the bedroom where Defendant kept the pistol and ammunition (Greene)).

There may be witnesses, identified before trial, who will testify about Defendant receiving and possessing the stolen pistol and ammunition.

Expert testimony regarding the firearm and ammunition (Rivera). If completed before trial, an expert from Oregon State Police laboratory will testify about the forensic analysis of the pistol and ammunition.

The government expects to rest the case-in-chief before the end of the first trial day; however, trial time will be heavily dependent on Defendant's cross-examination of these witnesses.

## Case Chronology

On April 20, 2000, U.S. District Court Judge Redden sentenced Defendant as an armed career criminal to 235 months in prison followed by 5 years of supervised release. *U.S. v. Thrasher*, U.S.D.C. # 3:98-CR-00388-001-RE. A jury found him guilty of being a felon in possession of a loaded .380 pistol. Among Defendant's Oregon felony convictions were two for Delivery of Methamphetamine, Burglary in the First Degree and Felon in Possession of a Firearm.[1]

---

[1] On May 22, 1995, represented by Attorney Brendon Alexander, Defendant signed two guilty "plea petitions." One for being a felon in possession of a .12 gauge shotgun, delivery of methamphetamine and the other for burglary in the first degree. Above his signature, paragraph 17 stated: "I have been warned and do understand that a felony conviction means that under the laws of the United States and the laws of the State of Oregon, I may not hereafter possess, own, or have in my custody any pistol, rifle, or shotgun, and that it is a felony to violate this

**UNITED STATES' TRIAL MEMORANDUM**                                   **Page 2**

On July 18, 2016, U.S. District Court Judge Brown, in compliance with the Supreme Court's decision in *Johnson v. United States*, 135 S.Ct. 2551, 2563 (2015), granted Defendant's 28 U.S.C. § 2255 motion, finding his knowingly burglarizing an occupied dwelling with intent to commit the crime of menacing was not a violent felony offense. *U.S. v. Thrasher*, U.S.D.C. No. 3:98-CR-00388-001-BR; *see also State v. Thrasher*, the Circuit Court for the State of Oregon for Jefferson, Case No. 95 CR 0042-33. Judge Brown amended Defendant's judgment to 120 months, noted that Defendant completed his term of imprisonment, and reduced his term of supervised release to 17 months. Several general conditions of Defendant's release prohibited his possessing firearms and using or delivering controlled substances.

On March 20, 2017, two suspects (not identified as Defendant) stole from Robert Nelson's Portland home a Ruger, Model P89, 9mm Luger caliber pistol, serial number 309-87821. Nelson reported the theft on April 15, 2017.[2]

In March/April 2017, according to Oregon's Department of Motor Vehicles, Defendant's residential address in Gresham, Oregon, was less than 9 miles from Nelson's Portland home.

On May 19, 2017, Central Oregon Drug Enforcement Team (CODE) Detective R.C. Bigelow prepared an affidavit in support of a warrant to search Defendant's rented residence/bedroom. Oregon Circuit Court Judge Daniel Ahern signed the warrant authorizing the search. Paragraph 6 of the warrant specifically authorized seizure of "Firearms . . . that relate to the protection, purchase, or sale of controlled substance."[3]

---

prohibition." *See State v. Thrasher*, the Circuit Court for the State of Oregon for Jefferson, Case ## 94 CR 0308-33 and 95 CR 0042-33.

[2] The pistol's first purchaser, Mark Cooper, bought the pistol at Three Bears Guns in Portland, Oregon.

[3] Landlord/Owner Robert Greene also provided written consent for the search.

**UNITED STATES' TRIAL MEMORANDUM**                                    **Page 3**

CODE Detective Jason Wall smelled an overwhelming acrid smell of chemical as he walked in the hallway toward Defendant's bedroom and found the door to the bedroom to be locked.  In the bedroom, Detective Wall found a black plastic handgun case below the left side of the bed on the floor.  The handgun case contained a loaded Ruger, Model P89, 9mm Luger caliber pistol, serial number 309-87821, and four (one in pistol and three other) magazines loaded with 9mm Luger ammunition.  In a safe in the bedroom was methamphetamine and cocaine.  Packaging material, scales and drug ledgers were also in the bedroom.

In a hallway closet near Defendant's bedroom was a safe containing $16,965 and a backpack containing approximately 16 pounds of methamphetamine.

On May 20, 2017, Bend Police Department Detective Bigelow prepared an Affidavit in Support of Probable Cause for Defendant's arrest by Oregon State Police Sergeant Russo on May 19, 2017.  The Affidavit alleged Defendant committed eight (8) crimes including Felon in Possession of a Firearm, Count 5, a C Felony, Ore.Rev.Stat. 166.270.

On May 22, 2017, Jefferson County Deputy District Attorney Whiting filed an Information of the District Attorney, Case # 015811, accusing Defendant with Unlawful Manufacturing, Delivery and Possession of Methamphetamine and Possession of Cocaine, and being a Felon in Possession of a Firearm and Restricted Weapon.  Attorney Courtney L. Quale represented the Defendant.

On May 23, 2017, U.S. District Court Judge Brown signed U.S. Probation Officer Jeff Clinton's petition for a warrant and an order to show cause why Defendant's supervised release should not be revoked.[4]  It alleged Defendant violated standard conditions 2, 3 and 11.

_____

4 On June 30, 2107, U.S. Probation Officer Clinton informed the Bureau of Prisons (BOP) policy was to "credit any overserved time to any subsequent term of imprisonment imposed for

On May 25, 2017, Detective Bigelow filed the warrant's return. He reported the seized evidence included:

(1) Approximately 16 pounds of methamphetamine (packaged in approximately 18 zip lock bags),

(2) Approximately $16,965 in cash (44x$100, 20x$50, 568x$20, 14x$10, 13x$5)

(3) A loaded (15 rounds) Ruger, Model P89. 9mm Luge caliber pistol, serial number 309-87821, and,

(4) Three magazines loaded (36 rounds) with 9mm Luger ammunition marked with the head stamp "P M C 9MM LUGER."

On June 20, 2017, U.S. Magistrate Judge Thomas Coffin signed a Criminal Complaint alleging Defendant violated federal law by being a felon in possession of a firearm and ammunition and a stolen firearm, and issued a warrant for Defendant's arrest (ECF 1). The affidavit of Bureau of Alcohol, Tobacco and Firearms (BATF) Special Agent Jonathan Rivera supported the complaint and issuance of the warrant. The Sturm Ruger was manufactured the pistol in Arizona. Poongsang Metal Corporation manufactured the "PMC" ammunition in Seoul, South Korea.

On July 13, 2017, Defendant appeared before U.S. Magistrate Russo with Attorney Mark Weintraub on the warrants issued by U.S. District Court Judge Brown and U.S. Magistrate Judge Coffin.

---

violating supervised release for the amended sentence." But, "credit will not be granted for prison sentences imposed for new crimes." U.S.P.O. Clinton opined that Defendant's attorney that while unsure how much time Defendant "overserved," it would be more than enough to cover the maximum range of revocation.

**UNITED STATES' TRIAL MEMORANDUM**                                    **Page 5**

U.S.P.O. Clinton reported when arrested, Defendant was unemployed, and had an "extensive history of drug-related crimes that occurred in conjunction with his possession of firearms." Magistrate Judge Russo followed the recommendations of U.S.P.O. Clinton, U.S. Pretrial Office and the U.S. Attorney's office and ordered Defendant detained as a flight risk and danger to the community. ECF 6, 7. Judge Russo scheduled the preliminary examination for July 17, 2017.

On July 17, 2017, U.S. Magistrate Judge Coffin held a preliminary hearing. ECF 8. He found a factual basis existed to bind Defendant over for presentation of this matter to the grand jury and scheduled the arraignment for July 24, 2017.

On July 19, 2017, a federal grand jury returned a single count Indictment charging Defendant with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). ECF 10. Defendant requested arraignment rescheduled for July 31, 2017, ECF 14.

On July 31, 2017, appearing with Attorney Bryan Lessley, Defendant pled not guilty and trial was scheduled for September 27, 2017. ECF 15. Discovery was due by August 14, 2017. Magistrate Judge Coffin scheduled a status hearing for September 5, 2017.

On August 14, 2017, U.S. Magistrate Judge Russo appointed Attorney Per Olson, effective August 1, 2017, to substitute for Attorney Mark Weintraub.

On August 24, 2017, Attorney Per Olson and his investigator received 405 pages of discovery from the USAO including the search warrant, affidavit and return, the BATF's Rivera's reports, the accumulated initial CODE reports (not supplemental reports), prior conviction documents. There was considerable duplication of reports because the USAO disclosed to Attorney Olson the reports received from Agent Rivera and the Jefferson County District Attorney. Attorney Olson did not receive Drug Enforcement Administration reports due

**UNITED STATES' TRIAL MEMORANDUM**                                      **Page 6**

to the ongoing investigation as to Defendant's source(s) of methamphetamine, potential accomplices and customers.

On September 1, 2017, Defendant filed a comprehensive demand for discovery and wants the Court to exercise discretion to "order broader discovery." ECF 18.  Defendant's demands regarding information about the Confidential Reliable Informant referred to in the search warrant will likely require a pretrial hearing since providing what he demands would disclose the informant's identity. *See* ECF 18 ¶ 11.

The USAO has a justified concern for the informant's safety for as U.S.P.O. Clinton wrote in a Memorandum dated July 13, 2017, to Magistrate Judge Russo:

"On December 12, 1994, defendant was arrested for possession of a sawed off shotgun. Four days later, defendant was charged with Burglary 1st Degree after he forced his way into a residence with a firearm and stated he was going to kill a witness in the case involving the sawed off shotgun."

At the September 6, 2017, status hearing, the USAO provided Attorney Olson 89 more pages of discovery including copies of photographs from the search.  After the hearing, the USAO received from DEA Agent Jack Wilson all three DEA laboratory reports (prepared August 31, 2017) analyzing the methamphetamine seized.  The USAO will disclose these and other reports including supplemental reports on September 11, 2017.  The USAO ordered transcripts of grand jury witness(es), and when received, will provided them to Attorney Olson.

At the status hearing before U.S. Magistrate Judge Russo, the USAO indicated it would seek new charges in a Superseding Indictment on September 20, 2017.  If there is a Superseding Indictment, the USAO will disclose additional DEA reports.

**UNITED STATES' TRIAL MEMORANDUM**                                                    **Page 7**

## Charges, Elements, Maximum Sentences and
## Predicted Advisory Guideline Range

## Count 1

### Felon in Possession of Firearm and Ammunition

The Indictment charges Defendant with being a Felon-in-Possession of a firearm and ammunition, and identifies five of his prior felony convictions.  18 U.S.C. § 922(g)(1).

## Elements

Defendant is guilty of being a felon in possession of a firearm and ammunition if the government's evidence proves beyond a reasonable doubt that:

1.      He knowingly possessed a firearm or ammunition on or about the date in that count;

2.      The firearm or ammunition had been shipped or transported from one state to another, or from a foreign nation to the United States; and,

3.      He had a conviction for a crime punishable by imprisonment for a term exceeding one year.

## Knowingly

Knowingly means an awareness of the facts constituting the offense.  *Bryan v. United States*, 524 U.S. 184, 192-93 (1998).  The government is not required to prove a defendant knew that (1) his possession of the firearm was a violation of law or (2) the firearm(s) had traveled in interstate commerce.  *Id.* at 193 (*citing Rogers v. United States*, 522 U.S. 252, 254-55 (1998)((plurality opinion)(it is not necessary for the government to prove that a defendant knew that his possession of a machinegun was unlawful).

**UNITED STATES' TRIAL MEMORANDUM**                                                    **Page 8**

If Defendant claims he was unaware possessing firearm or ammunition was unlawful, then the government would rebut such claim with Defendant's 2000 conviction of being a Felon in Possession of a Firearm in the United States District Court for the District of Oregon, Case Number 3:98-CR-00388-RE. *See also* Defendant's plea petitions in *State v. Thrasher*, the Circuit Court for the State of Oregon for Jefferson, Case ## 94 CR 0308-33 and 95 CR 0042-33.

### Actual and Constructive Possession

Possession of the firearm and ammunition can be actual or constructive, singular or joint. A defendant with immediate control or possession of the firearm or ammunition is in actual possession.

Courts consistently affirm convictions where a witness testified to seeing the defendant holding a firearm or ammunition, even if the defendant was not in possession of the firearm when arrested, and there was no physical evidence linking the firearm to the defendant. *See e.g., United States v. Haney*, 23 F.3d 1413, 1416-17 (8th Cir. 1994)(evidence sufficient to show possession when officer saw defendant drop what looked like a handgun and where police later found a revolver).

Constructive possession is the power to exercise dominion or control over the object, either directly or through another person, even though not in actual possession. Constructive possession exists when a defendant does not have actual possession, but instead knowingly has the power and intention at a given time to exercise dominion and control over the firearms. *United States v. Alverson*, 666 F.2d 341, 345 (9th Cir. 1982).

In this case, Defendant had actual and constructive possession of ammunition, and constructive possession of the pistol. In Defendant's locked bedroom in a gun case on the floor next to his bed was the stolen pistol and ammunition.

**UNITED STATES' TRIAL MEMORANDUM**                                              **Page 9**

**Firearm and Ammunition**

The term "firearm" is any weapon which will or is designed to or may readily be converted to expel a projectile by the action of an explosive.  18 U.S.C. § 921(a)(3).

The term "ammunition" means ammunition or cartridge cases, primers, bullets, or propellant powder designed for use in any firearm.  18 U.S.C. § 921(a)(17)(A).

It is not necessary to produce the firearm or ammunition at trial provided there is sufficient evidence from testimony and otherwise that the defendant possessed a firearm.  *United States v. Rivera*, 415 F.3d 284, 287 (2d Cir. 2005); *United States v. Gregg*, 803 F.2d 568, 571 (10th Cir. 1986)("The government was not required to produce an actual firearm at trial, or prove the specific manufacturer or serial number of the firearm in question").

Nor must there be proof the firearm was capable of firing or was loaded.  *United States v. Morris*, 904 F.2d 518, 519 (9th Cir. 1990)(statute imposes no requirement that the firearm be loaded or operable).

**Interstate/Foreign Commerce**

The term "interstate commerce" includes commerce between any place in a State and any place outside that State, but does not include commerce between places within the same State. 18 U.S.C. § 921(a)(2).  So long as there is proof the firearm or ammunition, at some point traveled in interstate or foreign commerce, the element of interstate or foreign commerce is satisfied.  *Scarborough v. United States*, 431 U.S. 563 (1977); *United States v. Beasely*, 346 F.3d 930, 936 (9th Cir. 2003)(one time past connection to interstate commerce is sufficient).

A government agent's testimony the firearm and ammunition was not manufactured in the state where a defendant possessed them is sufficient to establish the interstate or foreign commerce element.  *See e.g., United States v. Corey*, 207 F.3d 84, 88-91 (1st Cir. 2000)(not error

for Bureau of Alcohol, Tobacco and Firearms agent to testify that based on his education, experience and training that the firearm had not been manufactured in the state where defendant possessed.

Relying on training, experience and education, BATF Special Agent Rivera will testify the pistol was a firearm manufactured in Arizona and the 9mm caliber cartridges was ammunition manufactured in South Korea.

Proof that a firearm traveled in interstate commerce can also come from the firearm. *United States v. Patterson*, 820 F.2d 1524, 1526 (9th Cir. 1987)(commerce nexus satisfied by evidence that firearm found in defendant's possession in California bore an imprint that it had been manufactured in Florida). Likewise, proof that the firearm was from a foreign country satisfies the interstate commerce requirement. *United States v. Alvarez*, 972 F.2d 1000, 1002-04 (9th Cir. 1992)(evidence of firearm's foreign manufacture is sufficient to support finding that it moved in interstate commerce); *see also United States v. Thody*, 978 F.2d 625, 630-31 (10th Cir. 1992)("Made in Spain" marking on gun satisfied commerce requirement); *see e.g.,* Counts 13, 14, 17, 18 ("Made in Russia").

## Prior Conviction(s)

Proof a defendant was a felon when he possessed a firearm and ammunition is accomplished two ways.

One, is the government's offering as an exhibit a certified copy of one of Defendant several felony convictions (*e.g.,* a certified copy of Defendant's conviction for Felon in Possession of a Firearm in the United States District Court for the District of Oregon, Case Number 3:98-CR-00388-RE. 2001). Because of the substantial prejudicial affect, the government will not offer his other felony convictions to prove this element of the offense.

**UNITED STATES' TRIAL MEMORANDUM**                                    **Page 11**

*United States v. Breitkreutz*, 8 F.3d 688, 692 (9th Cir. 1993)(it was prejudicial error to permit government to present evidence of defendant's three predicate felonies).

Second, Defendant may stipulate that before he allegedly possessed the firearm and ammunition described in the Superseding Indictment, he had a felony conviction punishable by imprisonment for a term exceeding one year. Opting for this approach prevents the jury from learning the nature of his prior felony conviction and avoids the risk of the jury returning verdicts tainted by improper considerations. *Old Chief v. United States*, 519 U.S. 172, 174, 189 (1997) (reversible error to allow government to prove nature of prior conviction when defendant offers to stipulate to the prior conviction); *United States v. Hernandez*, 109 F.3d 1450, 1452 (9th Cir. 1997).

## Maximum Sentence, Advisory Guideline Sentencing Range And 18 U.S.C. § 3553(a) Factors

**Maximum Sentence**

If convicted of being a felon in possession of a firearm or ammunition, Defendant faces a maximum term of imprisonment of ten years' imprisonment, a maximum $250,000 fine, and a maximum three-year term of supervised release. 18 U.S.C. § 922(g)(1).

**Advisory Sentencing Guidelines Criminal History Category**

The Indictment charges Defendant with being a Felon in Possession of a Firearm on May 19, 2017. He has two prior felony convictions for controlled substance offenses and his base offense level is 24. U.S.S.G. §§ 2K2.1(a)(2).

Since the firearm was stolen, his offense level is increased by 2 pursuant to U.S.S.G. § 2K2.1(b)(4). His offense level is increased 4 more levels pursuant to U.S.S.G. § 2K2.1(b)(6)(B) because he possessed the pistol and ammunition while committing the federal offense of possession of methamphetamine with intent to distribute. The total offense level is 30.

Due to his imprisonment, all of Defendant's prior felonies are time barred except for his federal conviction for being a felon in possession of a firearm.  That conviction and because he committed this offense while on supervised release results in 5 criminal history points.  U.S.S.G. §§ 4A1.1(a) and (d).  Five criminal history points places Defendant in a Criminal History category of III.

An offense level of 30 with a Criminal History category III results in an advisory guideline range of 121-151 months.  One month above the maximum allowed by statute.

## Sentencing 18 U.S.C. § 3553(a) Factors

A court must impose a sentence sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a)(2), after considering the factors in 18 U.S.C. § 3553(a)(1) and (2).

The factors the Court must consider include:

(1) the nature and circumstances of the offense(s) and the history and characteristics of the defendant;

(2) the need for the sentence imposed to

(a) reflect the seriousness of the offense(s), to promote respect for the law, and to provide just punishment for the offense;

(b) to afford adequate deterrence to criminal conduct;

(c) to protect the public from further crimes of the defendant; and

(d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentence(s) available;

(4) the kinds of sentence(s) and the sentencing range under the advisory sentencing guidelines;

(5) pertinent policy statements by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense (*e.g.,* burglary, theft).

Considering the nature and circumstances of this offense, Defendant's adult history and characteristics, the need to protect the public from his committing further crimes, to afford adequate deterrence and provide just punishment, if convicted, Defendant should receive the same sentence he received from Judge Brown on July 16, 2016, 120 months of imprisonment.

## Firearm and Ammunition and Separate Verdicts

Because the Indictment charges that Defendant possessed a firearm and ammunition, the jury must separately return verdicts as to firearm and ammunition. *United States v. Lyons*, 472 F.3d 1055, 1068 (9th Cir. 2007)(discussion as to when a specific unanimity instruction is appropriate); *United States v. Garcia-Rivera*, 353 F.3d 788 (9th Cir. 2003).

Special verdicts would require jurors to decide whether the Defendant knowingly possessed the pistol and ammunition.

## Factual Issues

Did Defendant, a felon, knowing possess stolen a firearm and ammunition?

## Summary of Facts

After serving a federal sentence for being a felon in possession of a firearm, when arrested, Defendant had a loaded .9mm caliber pistol round and three magazines loaded with .9mm caliber ammunition in a gun case in his locked bedroom.

## Admissibility of Defendant's Statements

Admissibility of a defendant's incriminating statements to law enforcement officials or agents generally requires a pretrial hearing outside the presence of the jury to determine their admissibility. *Jackson v. Denno*, 378 U.S. 368, 376-77 (1964). The government may offer Defendant's in custody unrecorded statement to Detective Bigelow. After being advised of his *Miranda* rights and acknowledging he understood them and read the Search Warrant, Detective Bigelow asked if he had any questions regarding the warrant. Defendant commented (not a quote) he was going back to prison because of what was at the house.

The trial court must initially decide if the Defendant's statements to law enforcement were voluntarily made. *Chavez v. Martinez*, 538 U.S. 760, 770 (2003)(*plurality opinion*)(use of involuntary statements at defendant's trial is barred by the Fifth Amendment). To determine if Defendant's statements were involuntary, the court must decide whether, under the totality of the circumstances, law enforcement officials obtained the evidence by overbearing the will of the accused. *Colorado v. Connelly*, 479 U.S. 157, 170 (1986); *Haynes v. Washington*, 373 U.S. 503, 513-14 (1963).

If this Court finds Defendant's statements were voluntarily made to police, then it must decide if *Miranda* warnings were required and given and, under the totality of the circumstances, if a defendant voluntarily, knowingly and intelligently waived the rights contained in those warnings. *Miranda v. Arizona*, 384 U.S. 436, 475 (1966). *Miranda* warnings must be given when a suspect is both in custody and subject to government interrogation. *Id.* at 479.

In ascertaining if a suspect is in custody, the ultimate inquiry is "whether there [was] a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *Sansbury v. California*, 511 U.S. 318, 322 (1994)(*per curiam*)(quoting *California v.*

*Beheler*, 463 U.S. 1121, 1125 (1983)). Government interrogation is express questioning or its functional equivalent of a suspect by persons the suspect knows are acting on behalf of the government. *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980).

If the government opts not to offer statements in its case-in-chief that Defendant made to law enforcement officers after his arrest, then the government will make hearsay objections to any attempt by Defendant to offer his custodial statements to law enforcement officers. Fed. R. Evid. 801.

### Motive and Intent Evidence – Rule 404(b) Notice

While the extrinsic acts to be offered against the Defendant are inextricably intertwined with the crimes he is charged with committing, out of an abundance of caution, Defendant is notified of the government's intent to offer such evidence as required for Rule 404(b) evidence. Fed. R. Evid. 404(b)(2)(A).

Fed. R. Evid. 404(b) "is a rule of inclusion – not exclusion." *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007)(*en banc*). Fed. R. Evid. 404(b) generally prohibits the introduction of evidence of extrinsic acts that might adversely reflect on the actor's character, unless it bears upon a relevant issue in the case such as *motive, opportunity, intent, preparation, plan, knowledge, identity,* absence of mistake, or lack of accident. As the Supreme Court observed in *Huddleston v. United States*, 485 U.S. 681, 685 (1988), extrinsic acts evidence may be critical to the establishment of the truth as to a disputed issue, especially when the issue involves an actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.

In this case, the government will offer testimony and exhibits about Defendant's possession of controlled substances and items related to his distribution of methamphetamine

because criminal conduct supplies proof of his *motive, intent, preparation, plan,* and *knowledge of the pistol and ammunition.*  Such evidence is relevant and material to proving the elements of the charged offense.

Once the government has established that the extrinsic act evidence to be offered serves one of the purposes authorized by Rule 404(b)(2), the only conditions which justify the exclusion of the evidence are those described in Fed. R. Evid. 403.  *See Curtin* at 944.

Defendant's statements to accomplices about his other crimes is clearly relevant and its probative value as to all the charges and is not *substantially outweighed* by the danger of *unfair* prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.  Fed. R. Evid. 403.

When such "other crimes, wrongs, and bad acts" evidence is offered, the Court should give a "limiting instruction" (to be included in Government's Requested Jury Instructions) that such evidence not be considered to prove bad character or a disposition to commit crimes.

## Restraint of Defendant at Trial

As a general rule, a criminal defendant has a constitutional right to appear before the jury free of shackles.  *Illinois v. Allen*, 397 U.S. 337, 344 (1970); *Spain v. Rushen*, 883 F.2d 712, 716 (9th Cir. 1989)(*citing Wilson v. McCarthy*, 770 F.2d 1482, 1484 (9th Cir. 1985).  There is no denial of due process to shackle a defendant if there is evidence that he might attempt to escape and has demonstrated propensity for violence.  *Morgan v. Bunnell,* 24 F.3d 49, 51 (9th Cir. 1994).

When imposition of restraints at trial is to be based upon *conduct of a defendant that occurred outside the presence of the court*, the government must provide sufficient evidence to

**UNITED STATES' TRIAL MEMORANDUM**                                              **Page 17**

the court so that it can determine whether there is a manifest need for such restraints.  *Gonzalez v. Plilfer*, 341 F.3d 897, 902 (9th Cir. 2003).  However, "the court must pursue less restrictive alternatives before imposing physical restraints."  *Duckett v. Godinez*, 67 F.3d 734, 748 (9th Cir. 1995)(citations omitted).  In all cases in which appellate courts have approved trial courts shackling of defendants, there was evidence of disruptive courtroom behavior, attempts to escape from custody, assaults or attempted assaults while in custody, or a *pattern of defiant behavior toward corrections officials and judicial authorities. Id.* at 749.

Because the Defendant's history is adequately described in U.S.P.O. Clinton's Memorandum to U.S. Magistrate Judge Russo, imposition of restraints on Defendant is warranted.

## Expert Witnesses

The Ninth Circuit identified in *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000), six "preliminary question of law examinations" a trial judge must make under Fed. R. Evid. 702.  *Daubert v. Merrell Dow Pharmaceutical, Inc.,* 509 U.S. 579, 587, 593-94 (1993)(Fed.R.Evid. 702 assigns a "gatekeeping" role to trial court which requires "a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and . . . whether that reasoning or methodology properly can be applied to the facts in issue"); *Kuhmo Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999)("gatekeeping" obligation extended to non-scientific expert opinion).  Those questions are:

(1) Whether the expert's opinion is based on scientific, technical, or other specialized knowledge;

(2) Whether the expert's opinion would assist the trier of fact in understanding the evidence or determining a fact in issue;

**UNITED STATES' TRIAL MEMORANDUM**                                    **Page 18**

(3) Whether the expert has the appropriate qualifications; *i.e.,* some special knowledge,

skill, experience, training or education on that subject matter;

(4) Whether the testimony is relevant and reliable;

(5) Whether the methodology or technique the expert uses "fits" the conclusions

(credibility for the jury to decide); and

(6) Whether the probative value is substantially outweighed by the risk of unfair

prejudice, confusion of issues, or undue consumption of time.

Fed. R. Crim. P. 16(a)(1)(G), requires the parties to supply each other and this Court with

Notice of Expert's Testimony pursuant to Fed. R. Evid. 702, 703 and 706.

Through the discovery provided to the Defendant, the government has identified Bureau

of Alcohol, Tobacco and Firearms Special Agent Jonathan Rivera as an expert witnesses.

At trial, Agent Rivera will opine the firearm and ammunition Defendant possessed in

Oregon were manufactured outside the state.  *United States v.* Corey, 207 F.3d 84, 88-91 (1st

Cir. 2000)(it was not error to admit testimony of BATF agent that the firearm was not

manufactured in state of possession, as expert testimony was based on the agent's experience,

BATF records, and manuals).  Agent Rivera's expert testimony will satisfy the statutory

requirement that the firearm(s) traveled at some time in interstate commerce.  *Scarborough v.*

*United States*, 431 U.S. 563 (1977); *United States v. Beasley*, 346 F.3d 930, 936 (9th Cir. 1988).

The victim owner (Nelson) may also testify to the functionality of his stolen pistol.

## Defendant as a Witness

Defendant has not notified the government whether he intends to exercise his Fifth

Amendment right not to testify.  If he does not testify, the government will make no comment

about his decision. *Griffin v. California*, 380 U.S. 609, 611-12 (1965).  And, unless Defendant

objects, the Court should give a "no inference of guilt" jury instruction.  *Lakeside v. Oregon*, 435

U.S. 333, 340-41 (1978).

If Defendant represents himself, the government will object to his attempting to testify

while examining the government's witnesses.

## Impeachment Evidence

Fed. R. Evid. 609(a)(1)(A) permits impeachment of a witness who is not a defendant, for

a prior criminal conviction that was punishable by imprisonment for more than one year.

Before trial, the government will supply Defendant with any additional impeachment

material known to it that adversely affects the credibility of its witnesses.  *Giglio v. United*

*States*, 405 U.S. 150, 153-55 (1972)(the Constitution's due process clause requires the disclosure

of evidence which adversely affects the credibility of government witnesses).

## Video, Audio Recordings and Photographs

Fed. R. Evid. 901(b)(1) permits a witness with knowledge to authenticate or identify an

item of evidence.  Rules 1002 and 1003 provide that the original or a duplicate of the original is

admissible absent a "genuine question being raised about the original's authenticity."  The 1972

Advisory Committee Notes to Rule 1002 makes clear that the "usual course is for a witness on

the stand to identify the photograph or motion picture as a correct representation of events which

he saw or of a scene in which he is familiar.  In fact, he adopts the picture as his testimony, or, in

common parlance, uses the picture to illustrate his testimony.  Under these circumstances, no

effort is made to prove the contents of the picture and the rule is inapplicable."

In this case, to establish authenticity of the photographs, each percipient witness will

identify the photograph which depicts what they saw or were familiar including identifying

themselves and others they recognize.

**UNITED STATES' TRIAL MEMORANDUM**                                        **Page 20**

## **Conclusion**

Based on the foregoing, the government anticipates the jury will be supplied proof beyond a reasonable doubt that Defendant is guilty of the federal offense charged in the Indictment.

DATED this 10th day of September 2017.

BILLY J. WILLIAMS
United States Attorney


/s/ Frank R. Papagni, Jr.
FRANK R. PAPAGNI, OSB #762788
Assistant United States Attorney
(541) 465-6771

**UNITED STATES' TRIAL MEMORANDUM**                                          **Page 21**