IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

    Plaintiff,

v.

RONALD WAYNE THRASHER,

    Defendant.

_____

Case. No. 6:17-cr-00274-MC

ORDER

MCSHANE, Judge:

Defendant Ronald Wayne Thrasher is charged with Felon in Possession of a Firearm, Possession of a Stolen Firearm and Ammunition, Conspiracy to Possess with Intent to Distribute Methamphetamine, Possession with Intent to Distribute 50 or more grams of Methamphetamine, and Possession of a Firearm in furtherance of a Drug Trafficking Crime. On May 19, 2017, members of the Central Oregon Drug Enforcement (CODE) team executed a search warrant at Thrasher's residence located at 8109 Northwest Deschutes Avenue in Madras, Oregon. Officers executed the warrant after CODE team members Jason Wall, Richard Bigelow, and Josh Spano were involved in a controlled buy leading to an informant's arrest earlier that day. The informant identified Thrasher as her supplier and told the officers that she had purchased methamphetamine from Thrasher the previous day. The informant also indicated that Thrasher had transported large

1—ORDER

amounts of methamphetamine from California back to Central Oregon. She told officers she saw what she believed to be 15 pounds of methamphetamine in zip lock bags inside a black bag that Thrasher retrieved from under his bed. The informant then showed the detectives where she believed Thrasher lived, 8109 Northwest Deschutes Drive in Madras, Oregon.

      Relying on this information, the detectives asked the informant to call Thrasher to arrange a purchase of methamphetamine. The informant agreed. The informant told the detectives that whenever she speaks with Thrasher over the phone, they use "code" language, and never explicitly speak of controlled substances, prices, or amounts during their conversations. Under the detectives' supervision, the informant contacted Thrasher and asked if she could "meet him" or if she could "come see him". Thrasher stated he was driving from Prineville back to Madras, but could meet the informant at his residence.

      Based on all of this, Detective Bigelow started the process of obtaining a search warrant. Thrasher was stopped that afternoon by state police before he arrived back at his residence. Once Thrasher was in custody, Detectives Wall, Spano, and other officers went to Thrasher's residence. Upon arrival, they contacted Robert Greene, who also resided at 8109 Deschutes Drive. Greene informed the officers that Thrasher rented one room in the house and allowed the officers to gain entry and search the common areas of the residence. Later that evening, officers executed the search warrant. Officers smelled a chemical indicative of methamphetamine emanating from the hall closet. The officers opened the closet and saw a black bag containing 15 pounds of methamphetamine. The officers also discovered a package containing $16,965 worth of cash. Officers seized a smaller quantity of a controlled substance and a firearm found inside Thrasher's bedroom.

Pursuant to the search warrant, officers were also authorized to conduct a search of "all vehicles registered to or under the direct control of the occupants frequenting the premises to be searched at the time of warrant service." During the search of a Pontiac owned by Thrasher, officers found a canister of methamphetamine attached with a magnet to the car's undercarriage.

Thrasher moves for a *Franks* hearing, arguing that affiant Bigelow recklessly and intentionally made false statements and material omissions in his probable cause affidavit. Thrasher argues the affidavit does not support a finding of probable cause without this alleged false information and he is therefore entitled to a *Franks* hearing to cross examine the officers.

## STANDARDS

The Supreme Court outlined the standards a defendant faces when moving for a *Franks* hearing:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant. To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.

*Franks v. Delaware*, 438 U.S. 152, 170 (1978).

## DISCUSSION

"The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity"

and 'basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]' that probable cause existed." *Illinois v. Gates*, 462 U.S. 213, 238-39 (1983) alterations in original) (quoting *Jones v. United States*, 362 U.S. 257, 271 (1960)). Thrasher argues that upon removing the affidavit's false statements, and including material omissions Officer Bigelow withheld from the magistrate, the affidavit does not provide probable cause that methamphetamine would be found in Thrasher's residence or vehicle. In reviewing the affiant's statements and omissions, courts are not to "flyspeck" the affidavit. *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006). After all, officers drafting affidavits to present to a magistrate are usually not attorneys, and prepare the affidavit "in the midst and haste of a criminal investigation." *Gates*, 462 U.S. at 235. Therefore, courts reviewing an affidavit in the context of a *Franks* motion must use a commonsense manner rather than a "hypertechnical" review. *Id.* at 236. So long as the magistrate had a "substantial basis" for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more. *Id.*

Thrasher points to numerous alleged omissions and false statements from Officer Bigelow's affidavit. Below is the affidavit, with Thrasher's allegations included in bold brackets:

Summary of Affidavit:

This affidavit establishes probable cause to believe and I do believe that Ronald Wayne Thrasher DOB 08/28/1969 has committed the crimes of Unlawful Delivery of Methamphetamine and Unlawful Possession of Methamphetamine and Frequenting a Place where Controlled Substances are Used and that evidence of these crimes will be located within:

The residence located at 8109 NW Deschutes Drive within the unincorporated area of Madras, Jefferson County, Oregon. The residence is further described as being a single story manufactured home. The primary color is white with light blue in color trim. The front door is white and faces to the south. The numbers

8109 are posted in white on a green sign that is posted directly to the west of the residence driveway at Deschutes Drive.

Any person frequenting the listed address at the time of warrant service.

All vehicles registered to or under the direct control of **Ronald Wayne Thrasher DOB 08/29/1969**.

Any and all vehicles registered to or under the direct control of the occupants frequenting the premises to be searched at the time of warrant service.

**Local Investigation:**

Within seven days of 05/19/2017 I spoke to a Confidential Reliable Informant, hereafter referred to as CRI, about the drug trafficking of Ronald Wayne Thrasher DOB 08/28/1969. **[False – this happened on 5/19/17, not within 7 days of it].** At the time CRI described thrasher as a white male adult, approximately 50 years old that lived in Madras, Jefferson County, Oregon.

CRI told me he/she has purchased methamphetamine from Thrasher on multiple occasions in the last 2 months. CRI told me he/she purchases methamphetamine from Thrasher every four or five days. CRI stated Thrasher told him/her that he travels to southern California to pick up multiple pounds of methamphetamine and then traffics the methamphetamine back to the Madras, Jefferson County, Oregon area. CRI has observed what he/she described as multiple pounds of methamphetamine that Thrasher showed him/her.

CRI told me within 14 days of 05/19/2017 CRI purchased commercial quantities of methamphetamine from Thrasher at his residence. While at the residence CRI observed what he/she described as multiple pounds of methamphetamine in Thrasher's room. I know based on my training and experience that methamphetamine is often times sold in .1 gram increments. I also know based on my training and experience that anything over 10 grams of methamphetamine is considered a commercial quantity of methamphetamine under Oregon law.

CRI stated he/she communicates with Thrasher via cellular phone using text messages and phone calls. CRI provided me with a phone number for Thrasher of 971-712-6424. A check of the cellular phone numbers using commercial databases revealed phone number 971-712-6424 is associated with Ronald Wayne Thrasher DOB 08/28/1969. **[Omission of fact that these databases would have shown Thrasher's association with address in Portland area]**.I showed CRI a photograph of Ronald Wayne Thrasher DOB 08/28/1969. I asked CRI if he/she knew the person from the photograph. CRI told me the person in the photograph was the Ron Thrasher he/she told me about. **[Omission of known fact that Thrasher's DMV address is in Gresham].**

CRI showed me his/her cellular phone which he/she used to communicate with Thrasher. I noted several phone calls made to Thrasher's phone number. I did not

find any text messages from Thrasher on CRI's phone. CRI told me he/she routinely deletes text messages from Thrasher. CRI drove with Detective Jason Wall of the Deschutes County Sheriff's Office and Central Oregon Drug Enforcement Team and Officer Josh Spano of the City of Bend Police Department to 8109 NW Deschutes Drive within the unincorporated area of Madras, Jefferson County, Oregon. **[Not accurate. CRI drove her own vehicle to Safeway parking lot in Madras, where she then got into the officer's vehicle].** CRI identified the property as the residence he/she went to when he/she purchased methamphetamine from Thrasher.

Within 48 hours of 05/19/2017 CRI contacted Thrasher via cellular phone. **[False – this happened same day]**. The phone conversation was conducted in the presence of Detective Jason Wall and Officer Josh Spano. During the phone conversation Thrasher agreed to sell CRI methamphetamine and arranged to meet CRI to purchase the methamphetamine. **[Intentionally false description of phone call]**. This conversation corroborated the CRI's drug purchasing relationship with Ronald Wayne Thrasher. **[Intentionally false].**

Using a law enforcement database I found that Ronald Wayne Thrasher DOB 08/28/1969 has a criminal history that includes convictions for Delivery of Controlled Substances X5 **[False – only 2 DCS convictions]**, Possession of Controlled Substances X 6 **[False – only 3 PCS convictions]**, and additional felony convictions for Felon in Possession of a Firearm, Burglary I, Unauthorized Use Motor Vehicle X2 **[False – only 1 UUMV conviction]**, and Criminal Driving Suspended X2. **[Omission of fact that last conviction was 19 years ago].**

CRI is considered reliable because he/she has provided specific and verified information to the Central Oregon Drug Enforcement Team, hereafter referred to as CODE team. **[Omission of fact that CRI repeatedly violated the law before, during, and after period of working for CODE, that she falsely claimed to be on a CODE operation during one arrest, and that she ultimately failed to fulfill her commitment to CODE and was convicted of drug charges]**. Previously, the CRI has conducted controlled buys for CODE and given reliable information which resulted in a search warrant and multiple arrests and convictions of offenders in federal court. **[False – only one federal conviction; only other prosecution, in state court, was dismissed]**. The information provided by CRI was found to be true and accurate through independent investigation. **[Too vague to be meaningful]**. CRI has provided information regarding illegal drug dealers including names, vehicles, and locations that I know to be accurate. **[Too vague and of questionable accuracy, since the affiant did not know this CRI before 5/19/17]**. CRI has provided information for consideration on pending criminal charges which includes drug charges where Ronald Wayne Thrasher was the source of the methamphetamine. CRI has a criminal history that includes convictions for Possession of Controlled Substances X 5, Identity Theft, and Hindering Prosecution. **[Omission of several identity theft counts and other crimes; omission of other uncharged crimes that**

> **reflect negatively on credibility; fails to mention criminal activity while acting as informant and that most recent conviction was in 2016]**.

Memo. in Supp. 8-10.

I address each of Thrasher's challenges in turn.

## I.  Thrasher argues that the affidavit falsely states that the informant provided the information within 7 days of the search warrant being executed.

Thrasher argues that the affidavit falsely states that affiant Bigelow spoke with CRI "within 7 days of May 19, 2017." Thrasher points out that this happened on May 19, 2017, and contends that affiant Bigelow wanted to give the impression that he had time to corroborate the information that CRI gave him.

Officer Bigelow did not mislead the magistrate. The Government has a protected "interest in maintaining [the] integrity of ongoing criminal investigations and ensuring the safety of the informant." *United States v. Napier*, 436 F.3d 1133, 1136 (9th Cir. 2006) (citing *Roviaro v. United States*, 353 U.S. 53, 60-64 (1957). The government's interest "protects more than just the name of the informant and extends to information that would tend to reveal the identity of the informant." *Id.* Officer Bigelow truthfully stated the dates in his affidavit. Any lack of specificity as to the underlying circumstances of the arrest and the informant's purchases of methamphetamine from Thrasher fall under the government's privilege in protecting the identity of a confidential informant during an active investigation.

## II. Thrasher argues that affiant Bigelow made a material omission when he failed to include that DMV records indicated that Thrasher lived in Gresham, Oregon.

Thrasher points out that affiant Bigelow failed to disclose that the DMV record check revealed that Thrasher was listed as living in Gresham, Oregon, instead of at 8109 NW Deschutes Drive in Madras, Oregon. While this is true, before obtaining the warrant, the detectives established that Thrasher was residing at the Madras, Oregon address. The informant

told detectives that she had repeatedly purchased methamphetamine from Thrasher at the Madras, Oregon address. The informant drove with the officer's to Thrasher's residence. Before obtaining the warrant, officers spoke to the owner of the residence at 8109 NW Deschutes Drive. The owner confirmed Thrasher rented one bedroom in the home. Additionally, Thrasher's own admission during the phone conversation revealed that he was driving back to Madras and that the informant could meet him at his residence in Madras, Oregon. The omission of Thrasher's apparently stale DMV address was not negligent and, in any case, was not material.

**III. Thrasher argues that affiant Bigelow intentionally falsified the affidavit by claiming that Thrasher agreed to sell methamphetamine to the informant during their phone conversation.**

Thrasher argues that affiant Bigelow made an intentional misrepresentation in the affidavit when he said that Thrasher "agreed to sell CRI methamphetamine and arranged to meet CRI to purchase the methamphetamine." In describing the phone call, Officer Wall wrote:

> during this conversation CRI asked Thrasher if he/she could "meet him" or if he/she could "come see him." Thrasher advised he was driving from Prineville OR towards Madras and was almost in the Terrebonne area. Thrasher advised CRI could meet him at his residence.

Ex. 2, 1.

Thrasher argues, "That was the full extent of the phone call; there was no mention of an 'agreement' to sell methamphetamine, nor any mention of drugs at all, either in coded language or not." Memo. in Supp., 21. Thrasher argues that adding the seemingly innocuous conversation to the affidavit detracts from any finding of probable cause.

Thrasher, however, may not point only to those portions of Officer Wall's narrative that purportedly support his case while ignoring portions of that same report indicating the call was not as innocent as argued by Thrasher. Here, Thrasher seeks to pluck one statement out of the

8—ORDER

report without including context from the statement immediately following. Officer Wall's report continues:

> CRI had previously explained that he/she would use code to speak to Thrasher, and never spoke of the actual controlled substances, prices, or amounts in plain language. CRI explained the code word he/she used during the conversation myself and Officer Spano listened to, referred to him/her attempting to obtain more methamphetamine.
>
> Based on my training and experience, I know and have been present during phone conversations when subjects involved in the distribution of controlled substances will use "code" words or phrases to make reference to quantities and prices to avoid detection by Law Enforcement.

Ex. 2, 1.

At best, Thrasher demonstrates that Officer Bigelow negligently failed to include a more detailed explanation of the call, including the informant's statement to the officers that she and Thrasher in fact spoke in code during the relevant phone call, and that the call related to an agreement for the informant to meet Thrasher to purchase methamphetamine. Recognizing that Officer Bigelow prepared the affidavit "in the midst and haste of a criminal investigation," *Gates*, 462 U.S. at 235, I decline to review the affidavit in a "hypertechnical" manner, *id.* at 236.

I note the context of the phone call not to peek outside the four corners of the affidavit, but instead to determine whether Officer Bigelow intentionally misled the magistrate. In viewing the rest of Officer Wall's report (introduced by Thrasher in support of his motion), it is clear that Officer Bigelow neither intentionally, nor recklessly, misled the magistrate. Instead, Officer Bigelow's statement that Thrasher "agreed to sell CRI methamphetamine and arranged to meet CRI to purchase the methamphetamine" is a reasonable interpretation of Officer Wall's description of the phone call and the informant's description of code words she and Thrasher used to arrange the sale of methamphetamine.

**IV. Thrasher argues that the affidavit is inaccurate because it did not expressly state the fact that CRI parked at Safeway and drove with detectives to Thrasher's residence in Madras, Oregon.**

The affidavit states that the informant drove with Wall and Spano to 8109 NW Deschutes Drive. Thrasher argues that this is not accurate because the informant actually drove her own vehicle to a Safeway in Madras, where she parked and then accompanied Wall and Spano to 8109 NW Deschutes Drive. Thrasher seems to argue that this is a material issue. This argument is meritless and, if accepted, would constitute "flyspecking" the affidavit. The informant directed Wall and Spano to 8109 NW Deschutes Drive, and the affidavit states that fact. Whether she drove to Safeway before getting in the officers' car is immaterial, and would have no influence on the probable cause determination.

**V. Thrasher argues that the affidavit falsely overstates his criminal history while minimizing the informant's criminal history.**

Thrasher argues that affiant Bigelow falsely claimed that Thrasher had five convictions for delivery of a controlled substance, six convictions for possession of a controlled substance, and two convictions for unauthorized use of a motor vehicle. Thrasher contends that these misstatements are material to the finding of probable cause because although he has convictions for all of these offenses, he does not have as many as stated in the affidavit. He also points out that affiant Bigelow failed to mention that his convictions are 19 years old and therefore stale.

Under *Franks*, the Court rejected the argument that a "truthful" showing meant that every fact recited in the affidavit is necessarily correct. *Franks*, 438 U.S. at 165. Instead, the Court said that "probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily, thus truthful means that the information put forth is believed or appropriately accepted by the affiant as true." *Id.* The Court also made clear that defendant's accusations of

10—ORDER

deliberate falsehoods or reckless disregard for the truth must be accompanied by evidence, such as affidavits or sworn statements by witnesses. *Id.* at 171.

Detectives may have acted hastily, knowing they needed to collect all of this information quickly, but there is no evidence they acted in bad faith. The affidavit accurately informed the magistrate that Thrasher had numerous felony drug convictions. "A suspect's criminal history 'can be helpful in establishing probable cause, especially where the previous arrest or conviction involves a crime of the same general nature as the one the warrant is seeking to uncover.'" *United States v. Perkins*, 850 F.3d 1109, 1120 (9th Cir. 2017) (quoting *United States v. Nora*, 765 F.3d 1049, 1059 (9th Cir. 2014)). Thrasher had multiple prior felony drug convictions. Although those convictions were many years old, the "temporal gap" is bridged here by the fact that Thrasher was only recently released from prison after serving 17 years in federal prison. Although Officer Bigelow was perhaps reckless in listing the exact number of Thrasher's convictions, the fact that Thrasher has been convicted of delivery of a controlled substance two times instead of five times, and possession of a controlled substance three times instead of six times is immaterial in determining whether probable cause exists.

Thrasher also argues that affiant Bigelow intentionally downplayed the informant's past criminal behavior in order to make her information look more credible to the magistrate. He points out that the affidavit does not state that the informant had lied to law enforcement on previous occasions, that her most recent conviction was in 2016 for theft, and that the informant had a less-than stellar performance history when working as an informant. Thrasher fails to submit any evidence demonstrating Officer Bigelow was aware of the informant's questionable history as an informant, including an email from a deputy district attorney essentially stating the informant lied about everything, or the specific facts surrounding the informant's previous

arrests. One cannot expect an officer to peruse every police report of every interaction with an informant before preparing an affidavit. This is especially true when, as was the case here, the informant's arrest, her information about Thrasher, and the search of Thrasher's residence occurred on the same day. Additionally, despite Thrasher's statement at oral argument that this case does not involve a large police department with hundreds of officers, there is scant evidence (and no direct evidence) that Officer Bigelow knew any of the information Thrasher argues he should have been aware of.

For purposes of determining the existence of probable cause, an informant's reliability and basis of knowledge "are relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Gates*, 462 U.S. at 233. "[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case." *Id.* at 234.

The informant's multiple convictions for crimes of dishonesty indicate the officers should have questioned the reliability of her statements. This is true of most informants involved in drug trafficking investigations. But numerous factors compensated for the informant's deficits when it came to assessing truthfulness. If the informant has provided accurate information on past occasions, they may be presumed trustworthy on subsequent occasions. *United States v. Alexander,* 761 F.2d 1294, 1300 (9th Cir.1985). When the information provided in the past involved the same type of criminal activity as the current information, the inference of trustworthiness is even stronger. *United States v. Angulo-Lopez*, 791 F.2d 1394 (9th Cir. 1986)

(citing *Gates*, 462 U.S. at 233). Finally, an informant's reliability may be demonstrated through independent police corroboration of the information provided. *United States v. Freitas,* 716 F.2d 1216, 1222 (9th Cir.1983).

Here, the informant provided reliable information in the past, and had participated in controlled buys before that led to multiple arrests and at least one conviction. Additionally, the detectives corroborated her story by verifying that all of Thrasher's information she gave them was accurate, including his name, residence, and phone number. As noted, before obtaining the search warrant, the officers confirmed with the owner of 8109 NW Deschutes Drive that Thrasher in fact rented a room at the house. Detectives listened to the phone conversation the informant had with Thrasher setting up a purchase of methamphetamine.

The informant incriminated herself with her statements to the officers. Although the officers arrested the informant with methamphetamine, she volunteered numerous other commercial purchases from Thrasher in the weeks before that arrest. The affidavit accurately portrayed the informant as one seeking consideration for providing information about Thrasher. Although the affidavit perhaps recklessly minimized the informant's prior convictions for crimes of dishonesty, the affidavit alerted the magistrate to the informant's conviction for identity theft. Therefore, any omission of the informant's other convictions was immaterial. The fact that the informant provided inculpatory information to the officers, had previously provided accurate tips leading to a conviction for a drug crime, and the fact that the officers corroborated many of her statements compensated for her general unreliability. *See Gates*, 462 U.S. at 232 (an informant's reliability and basis of knowledge "are relevant considerations in the totality-of-the-circumstances analysis that traditionally has guided probable-cause determinations: a deficiency

in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability.").

Thrasher argues this case is analogous to *United States v. Hall*, 113 F.3d 157 (9th Cir. 1997). I disagree. In *Hall*, the officer withheld the informant's crime of dishonesty from the magistrate. Here, the magistrate knew the informant had a conviction for a crime of dishonesty, but did not know the number of convictions. Probable cause in *Hall* depended entirely upon the information provided by the informant. The "corroboration of innocent facts" in *Hall* consisted of confirming a heavyset man named "Ron" drove a red pickup and lived in a mobile home. The only drug-related tip from that informant, regarding where Hall hid the cocaine inside his trailer, could not be corroborated until after the magistrate signed the warrant. Here, the officers listened to the informant arrange what they reasonably believed to be a coded agreement for Thrasher to sell methamphetamine to the informant. Additionally, while the informant in *Hall* only provided inculpatory information the officers already knew, the informant here told officers that Thrasher recently sold her multiple commercial quantities of methamphetamine. Finally, unlike the informant in *Hall* (who had a history of making false reports but no prior history of providing law enforcement with reliable information), the informant here previously provided information leading to at least one arrest and conviction for distributing a controlled substance. This case is distinguishable from *Hall*.

## CONCLUSION

The affidavit demonstrated a fair probability that methamphetamine would be found at Thrasher's residence and vehicles. The affidavit stated that an informant with a conviction for identity theft and numerous drug offenses revealed purchasing commercial quantities of methamphetamine from Thrasher, who also had numerous convictions for drug offenses. The

informant personally observed 15 pounds of methamphetamine in Thrasher's residence. The magistrate understood the informant hoped to receive consideration for providing information regarding Thrasher. The officers listened to a phone call in which the officers reasonably believed the informant agreed to meet Thrasher at his residence to purchase methamphetamine. The informant took officers to Thrasher's residence where the landlord confirmed Thrasher rented a room. The affidavit provided probable cause that officers would find methamphetamine in Thrasher's residence or vehicles. Therefore, Thrasher is not entitled to a *Franks* hearing. *Franks*, 438 U.S. at 170 ("if, when material that is subject to the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required.").

IT IS SO ORDERED.

DATED this 13th day of July, 2018.

          /s/ Michael McShane
          Michael McShane
          United State District Judge